Georganne W. Bradley
Nevada State Bar No. 1105
Kaempfer Crowell Renshaw Gronauer & Fiorentino
8345 West Sunset Road, Suite 250
Las Vegas, NV 89169
Telephone: (702) 792-7000
Facsimile: (702) 796-7181
Email:    gbradley@kcnvlaw.com

Roberto J. Kampfner
California Bar No. 179026
Melanie C. Scott
California Bar No. 234646
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA  90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
E-mail:    rkampfner@whitecase.com
E-mail:    mcscott@whitecase.com

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>VCSP, LLC, <u>et al.</u>,[1]<br><br>        Debtors. | Case No.  09-12390-lbr<br><br>Jointly Administered<br><br>**THIRD AMENDED PLAN OF REORGANIZATION OF VCSP, LLC DATED DECEMBER 21, 2009**<br><br>Date:  January 8, 2010<br>Time: 9:30 a.m. |

---

[1]    The Debtors are the following entities: VCSP, LLC, a Nevada limited liability company (EIN 20-4263609); and Boulevard Enterprises, LLC, a Nevada limited liability company (EIN 20-8105362).

# TABLE OF CONTENTS

**Page**

ARTICLE 1.        DEFINITIONS AND RULES OF INTERPRETATION ...................................1
    1.1.    Administrative Claim.................................................................................1
    1.2.    Administrative Claim Bar Date ................................................................2
    1.3.    Allowed.....................................................................................................2
    1.4.    Anduril......................................................................................................2
    1.5.    Avoidance Actions...................................................................................2
    1.6.    Bankruptcy Code .....................................................................................2
    1.7.    Bankruptcy Court .....................................................................................2
    1.8.    Bankruptcy Rules......................................................................................2
    1.9.    Bar Date ...................................................................................................2
    1.10.   Building Six ..............................................................................................2
    1.11.   Building Six Deficiency Claims ...............................................................3
    1.12.   Building Six Secured Claims ...................................................................3
    1.13.   Building Six Deed of Trust ......................................................................3
    1.14.   Building Six Guarantees ..........................................................................3
    1.15.   Building Six Guarantors ...........................................................................3
    1.16.   Building Six Lenders ................................................................................3
    1.17.   Building Six Loan Agreement ..................................................................3
    1.18.   Building Six Loan Documents ..................................................................3
    1.19.   Building Six Note .....................................................................................3
    1.20.   Business Day.............................................................................................3
    1.21.   Cash..........................................................................................................3
    1.22.   Chapter 11 Case .......................................................................................3
    1.23.   Claim........................................................................................................3
    1.24.   Class.........................................................................................................4
    1.25.   Confirmation ............................................................................................4
    1.26.   Confirmation Date ...................................................................................4
    1.27.   Confirmation Hearing ..............................................................................4
    1.28.   Confirmation Order...................................................................................4
    1.29.   Consolidated ............................................................................................4
    1.30.   Consolidated Building Six Order..............................................................4
    1.31.   Consolidated Guarantees ..........................................................................4
    1.32.   Consolidated Lender ................................................................................4
    1.33.   Consolidated Settlement ..........................................................................4
    1.34.   Consolidated Settlement Agreement. .......................................................4
    1.35.   Consolidated Subordination Agreement ...................................................4
    1.36.   Consolidated Subordinated Deed of Trust................................................5
    1.37.   Consolidated Subordinated Loan Agreement ...........................................5

1.38. Consolidated Subordinated Loan Documents ....................................................5
1.39. Consolidated Subordinated Note ...........................................................................5
1.40. Consolidated Subordinated Note Claims .............................................................5
1.41. Contractors ...............................................................................................................5
1.42. Creditor .....................................................................................................................5
1.43. Debtor ........................................................................................................................5
1.44. DIP Claims ................................................................................................................5
1.45. DIP Loan Agreement ..............................................................................................5
1.46. DIP Lender ................................................................................................................5
1.47. Disclosure Statement ..............................................................................................5
1.48. Disputed ....................................................................................................................5
1.49. Distribution ...............................................................................................................6
1.50. Distribution Date .....................................................................................................6
1.51. Effective Date ...........................................................................................................6
1.52. Estate .........................................................................................................................6
1.53. Final Decree ..............................................................................................................6
1.54. Final Order ...............................................................................................................6
1.55. FDIC ...........................................................................................................................7
1.56. Franklin .....................................................................................................................7
1.57. Franklin Building Six Order ..................................................................................7
1.58. Franklin Secured Claims ........................................................................................7
1.59. Franklin Collateral ..................................................................................................7
1.60. Franklin Collateral Documents .............................................................................7
1.61. Franklin Collateral Value .......................................................................................7
1.62. Franklin Deed of Trust ...........................................................................................7
1.63. Franklin Deficiency Claims ....................................................................................7
1.64. Franklin Guarantees ...............................................................................................7
1.65. Franklin Guarantors ...............................................................................................7
1.66. Franklin Loan Agreement ......................................................................................7
1.67. Franklin Loan Documents ......................................................................................8
1.68. Franklin Note ...........................................................................................................8
1.69. Galadriel ....................................................................................................................8
1.70. General Unsecured Claims .....................................................................................8
1.71. General Unsecured Creditors .................................................................................8
1.72. Governmental Unit ..................................................................................................8
1.73. Governmental Unit Claims Bar Date ....................................................................8
1.74. Guarantees ................................................................................................................8
1.75. Guarantors ................................................................................................................8
1.76. Insider Claims ..........................................................................................................8
1.77. Lenders ......................................................................................................................8
1.78. Lien ............................................................................................................................9

ii

1.79.   Loan Documents ........................................................................9
1.80.   Local Rules ..............................................................................9
1.81.   Lock Box Account ....................................................................9
1.82.   New Building Six Note ..............................................................9
1.83.   New Creditor Membership Interests ...........................................9
1.84.   New Franklin Deed of Trust ......................................................9
1.85.   New Franklin Note ....................................................................9
1.86.   New Galadriel Membership Interests ..........................................9
1.87.   New Membership Interests .........................................................9
1.88.   Old Membership Interests ..........................................................9
1.89.   Person ......................................................................................9
1.90.   Petition Date ............................................................................10
1.91.   Plan .........................................................................................10
1.92.   Plan Documents .......................................................................10
1.93.   Plan Trust ................................................................................10
1.94.   Plan Trust Agreement ...............................................................10
1.95.   Plan Trustee .............................................................................10
1.96.   Plan Trust Interests ..................................................................10
1.97.   Professionals ...........................................................................10
1.98.   Professional Fees .....................................................................10
1.99.   Project ....................................................................................11
1.100.  Property ..................................................................................11
1.101.  Property Tax Claims .................................................................11
1.102.  Pro Rata Share .........................................................................11
1.103.  Prudential ................................................................................11
1.104.  Rhapsody Partners, LLC ...........................................................11
1.105.  Schedules ................................................................................11
1.106.  Secured Claim .........................................................................11
1.107.  Select Build .............................................................................12
1.108.  Select Build Promissory Note ...................................................12
1.109.  Select Build Secured Claim ......................................................12
1.110.  Tennant Improvement Account ..................................................12
1.111.  Terra Contracting .....................................................................12
1.112.  Terra Promissory Note ..............................................................12
1.113.  Terra Secured Claim .................................................................12
1.114.  Valtus .....................................................................................12
ARTICLE  2.        TREATMENT OF UNCLASSIFIED CLAIMS ....................12
2.1.   Unclassified Claims ...................................................................12
2.2.   Administrative Claims. ...............................................................12
2.3.   Claims for Professional Fees .....................................................13
2.4.   Valtus and Prudential ................................................................13

iii

2.5.   Post-Effective Date Professional Fees ...................................................13

2.6.   Debtor-in-Possession Loan Claims ......................................................14

ARTICLE  3.        CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...................14

ARTICLE  4.        TREATMENT OF CLAIMS AND EQUITY INTERESTS ......................14

4.1.   Class 1 – Property Tax Claims.............................................................14

4.2.   Class 2 – Terra Secured Claims. ..........................................................15

4.3.   Class 3 – Select Build Secured Claims ................................................15

4.4.   Class 4 – Franklin Secured Claims. .....................................................15

4.5.   Class 5 – Building Six Secured Claims. ...............................................16

4.6.   Class 6 – General Unsecured Claims. ..................................................16

4.7.   Class 7 – Insider Claims. .....................................................................16

4.8.   Class 8 - Equity Interests. ....................................................................17

ARTICLE  5.        IMPLEMENTATION OF THE PLAN ........................................17

5.1.   Certain Cash Contributions ..................................................................17

5.2.   Matters Relating to Franklin. ...............................................................17

5.3.   Issuance of Building Six Note ..............................................................18

5.4.   Issuance of New Membership Interests in Debtor................................19

5.5.   Management of Debtor. ........................................................................19

5.6.   Cash Collateral Provisions. ..................................................................20

5.7.   Release and avoidance of Liens ...........................................................21

5.8.   Certain Tax Provisions. ........................................................................21

5.9.   Issuance of New Membership Interests ................................................21

5.10.  Post-confirmation matters ....................................................................22

5.11.  Certain Provisions Concerning Guarantees .........................................22

5.12.  The Plan Trust......................................................................................23

5.13.  Corporate Authority .............................................................................24

5.14.  Modification of Subordination..............................................................24

5.15.  Certain Provisions Regarding the Franklin Deficiency Claim .............24

5.16.  Consolidated Settlement ......................................................................25

ARTICLE  6.        CONDITIONS PRECEDENT ...............................................25

6.1.   Condition to Confirmation ...................................................................25

6.2.   Conditions to Effectiveness .................................................................25

6.3.   Waiver of Conditions ...........................................................................25

6.4.   Failure of Conditions ...........................................................................25

ARTICLE  7.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES....................26

7.1.   Rejection of Executory Contracts and Unexpired Leases.....................26

7.2.   Assumed Contracts ...............................................................................26

7.3.   Bar Date ...............................................................................................26

iv

ARTICLE 8.     DISPUTED CLAIMS ................................................................................27
    8.1.   Objection Deadlines.............................................................................................27
    8.2.   Prosecution of Disputed Claims...........................................................................27
    8.3.   Entitlement to Plan Distributions upon Allowance ...............................................27

ARTICLE 9.     EFFECT OF CONFIRMATION ..............................................................27
    9.1.   Revesting of Assets..............................................................................................27
    9.2.   Discharge ............................................................................................................28
    9.3.   Judgments Void ...................................................................................................28

ARTICLE 10.     RETENTION OF JURISDICTION ........................................................28

ARTICLE 11.     AMENDMENT AND WITHDRAWAL OF PLAN ...................................30
    11.1.   Amendment of the Plan ......................................................................................30
    11.2.   Revocation or Withdrawal of the Plan.................................................................31

ARTICLE 12.     ACCEPTANCE OR REJECTION OF THE PLAN ..................................31
    12.1.   Impaired Classes to Vote....................................................................................31
    12.2.   Acceptance by Class of Creditors .......................................................................31

ARTICLE 13.     MISCELLANEOUS ...............................................................................31
    13.1.   Settlement of Objections after Effective Date ......................................................31
    13.2.   Holding of, and Failure to Claim, Undeliverable Distributions.............................31
    13.3.   Post-Effective Date Distributions ........................................................................32
    13.4.   Fractional Amounts.............................................................................................32
    13.5.   Ex Parte Relief ...................................................................................................32
    13.6.   Exculpation ........................................................................................................32
    13.7.   Binding Effect ....................................................................................................32
    13.8.   Governing Law ...................................................................................................32
    13.9.   Modification of Payment Terms ..........................................................................33
    13.10.  United States Trustee Fees..................................................................................33
    13.11.  Computation of Time ..........................................................................................33
    13.12.  Final Decree .......................................................................................................33
    13.13.  No Admissions ....................................................................................................33

v

# PLAN OF REORGANIZATION

VCSP, LLC, a Nevada limited liability company (the "Debtor"), a debtor and debtor-in-possession in the above-captioned Chapter 11 Case, hereby proposes the following Third Amended Plan of Reorganization (the "Plan") for the resolution of the Debtor's outstanding Claims and equity interests.  The Plan is not intended to and does not affect Boulevard Enterprises, LLC, a Nevada limited liability company ("Boulevard"), a debtor in a jointly administered case.

*All holders of Claims against, and equity interests in, the Debtor are encouraged to read the Plan and the related solicitation materials in their entirety before voting to accept or reject the Plan.*

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 11.1 of the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its substantial consummation.

## ARTICLE  1.  DEFINITIONS AND RULES OF INTERPRETATION

For purposes of the Plan, all capitalized terms shall have the meanings ascribed to them in this Article 1 of the Plan.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in the Plan, the following terms have the meanings specified below:

**1.1.  Administrative Claim**.  A Claim for any cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's businesses; (c) actual and necessary costs and expenses of preserving

the Estate or administering the Chapter 11 Case; and (d) all Professional Fees to the extent Allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code.

**1.2. Administrative Claim Bar Date**.  The date that is thirty (30) days after the Effective Date.

**1.3. Allowed**.  With reference to any Claim against or equity interest in the Debtor, (a) any Claim which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or objection to Claim has been filed, (b) any Claim or equity interest allowed hereunder, (c) any Claim, proof of which was filed on or before the Bar Date, or, with respect to a Governmental Unit, before the Governmental Unit Claims Bar Date, or equity interest, which is not Disputed, (d) any Claim or equity interest that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or (e) any Claim or equity interest which, if Disputed, has been allowed by Final Order.

**1.4. Anduril**.  Anduril, LLC, a Washington limited liability company, in its capacity as Manager of the Debtor.

**1.5. Avoidance Actions**.  All statutory causes of action preserved for the Estate under sections 542, 543, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

**1.6. Bankruptcy Code**.  Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.7. Bankruptcy Court**.  The United States Bankruptcy Court for the District of Nevada with jurisdiction over the Chapter 11 Case.

**1.8. Bankruptcy Rules**.  Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules, as applicable to the Chapter 11 Case.

**1.9. Bar Date**.  The date established by order of the Bankruptcy Court as the last day for the filing of proofs of claim against the Debtor; provided, that the deadline for filing proofs of claim by a Governmental Unit shall be the Governmental Unit Claims Bar Date.

**1.10. Building Six**.  The collateral under the Building Six Deed of Trust.

2

**1.11. Building Six Deficiency Claims**.  Any Claims of the Building Six Lenders against the Debtor under the Building Six Loan Documents other than the Building Six Secured Claims.

**1.12. Building Six Secured Claims**.  The Secured Claims of the Building Six Lenders against the Debtor under the Building Six Loan Documents in the amount of $996,000.

**1.13. Building Six Deed of Trust**.  The Deed of Trust with assignment of rents securing the obligations of the Debtor under the Building Six Loan Documents.

**1.14. Building Six Guarantees**.  The guarantees executed by Mark Doppe, Michelle Doppe and Rhapsody in connection with the Building Six Loan Documents.

**1.15. Building Six Guarantors**.  The guarantors executing Building Six Guarantees.

**1.16. Building Six Lenders**.  The lenders holding beneficial interests in the Building Six Note.

**1.17. Building Six Loan Agreement**.  The Business Loan Agreement dated as of May 20, 2008 by and between the Debtor and Consolidated acting for the benefit of the Building Six Lenders.

**1.18. Building Six Loan Documents**.  The Building Six Loan Agreement, the Building Six Note, the Building Six Deed of Trust, the Building Six Guarantees and any other agreements, documents, financing statements and instruments executed in connection therewith.

**1.19. Building Six Note**.  The promissory note executed by the Debtor in connection with the Building Six Loan Agreement.

**1.20. Business Day**.  Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.21. Cash**.  Currency, certified checks, official checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.22. Chapter 11 Case**.  The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor-in-possession, pending before the Bankruptcy Court.

**1.23. Claim**.  A claim, as defined in section 101(5) of the Bankruptcy Code, against a Person or its property, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

3

undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.24.  Class**.  A category of holders of Claims or equity interests that are substantially similar in nature to the Claims or equity interests of other holders placed in such category, as designated in Article 3 of the Plan.

**1.25.  Confirmation**.  The entry of the Confirmation Order by the Bankruptcy Court.

**1.26.  Confirmation Date**.  The date on which the Bankruptcy Court enters the Confirmation Order.

**1.27.  Confirmation Hearing**.  The hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**1.28.  Confirmation Order**.  The order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

**1.29.  Consolidated**.  CM Capital Services, LLC, DBA Consolidated Mortgage, LLC.

**1.30.  Consolidated Building Six Order**.  A Final Order (if any) determining that the Liens of the Building Six Lenders in respect of Building Six are senior to the Liens of Franklin in respect of Building Six.

**1.31.  Consolidated Guarantees**.  The guarantees executed by Mark Doppe, Michelle Doppe and Rhapsody in connection with the Consolidated Subordinated Loan Documents.

**1.32.  Consolidated Lender**.  The lender holding interests in the Consolidated Subordinated Note.

**1.33.  Consolidated Settlement**.  The settlement among Consolidated, the Debtor, Boulevard and the Guarantors approved by the Bankruptcy Court on November 2, 2009.

**1.34.  Consolidated Settlement Agreement**. The agreement evidencing the Consolidated Settlement dated as of September 25, 2009, a copy of which is attached as Exhibit D.

**1.35.  Consolidated Subordination Agreement**.  The Subordination Agreement dated as of

4

February 28, 2006 between Consolidated and Franklin.

**1.36.  Consolidated Subordinated Deed of Trust**.  The Deed of Trust with Assignment of Rents securing the obligations of the Debtor under the Consolidated Subordinated Loan Agreement.

**1.37.  Consolidated Subordinated Loan Agreement**.  The Business Loan Agreement dated as of February 2006 by and between the Consolidated Lender and the Debtor.

**1.38.  Consolidated Subordinated Loan Documents**.  The Business Loan Agreement, the Consolidated Subordinated Note, the Consolidated Subordinated Deed of Trust, the Consolidated Guarantees and other agreements, documents, financing statements and instruments executed in connection therewith.

**1.39.  Consolidated Subordinated Note**.  The promissory note executed by the Debtor in connection with the Consolidated Subordinated Loan Agreement.

**1.40.  Consolidated Subordinated Note Claims**.  The Claims of the Consolidated Lender against the Debtor as of the Petition Date under the Consolidated Subordinated Loan Documents.

**1.41.  Contractors**.  The contractors and subcontractors with Claims against the Debtor arising from the work of such contractors or subcontractors on the Property.

**1.42.  Creditor**.  Has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.43.  Debtor**.  Has the meaning set forth in the preamble to the Plan.

**1.44.  DIP Claims**.  All of the Claims of the DIP Lender under the DIP Loan Agreement.

**1.45.  DIP Loan Agreement**.  The Amended and Restated Credit Agreement dated as of March 26, 2009 by and between the Debtor, Boulevard and the DIP Lender.

**1.46.  DIP Lender**.  Galadriel, LLC, a Washington limited liability company, in its capacity as the debtor-in-possession lender.

**1.47.  Disclosure Statement.**  The disclosure statement for the Plan approved by the Bankruptcy Court pursuant to section 1125(b) of the Bankruptcy Code.

**1.48.  Disputed**.  With respect to Claims, any Claim: (a) that is listed in the Schedules as unliquidated, disputed, or contingent and as to which no proof of claim has been filed; or (b) as to which the Debtor or any other proper party-in-interest has interposed a timely objection or request

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law and as to which such objection, request for estimation, or request for subordination has not been withdrawn or determined by a Final Order.

**1.49.  Distribution**.  A payment of Cash to the holder of an Allowed Claim pursuant to the Plan.

**1.50.  Distribution Date**.  With respect to the holder of an Allowed Claim, the date upon which such holder receives a Distribution under the Plan on account of such Allowed Claim.

**1.51.  Effective Date**.  The later of: (a) the first Business Day that is at least eleven (11) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 6.2 of the Plan have been satisfied or waived.

**1.52.  Estate**.  The estate created in the Debtor's Chapter 11 Case in accordance with section 541 of the Bankruptcy Code.

**1.53.  Final Decree**.  A final decree closing this Chapter 11 Case.

**1.54.  Final Order**.  An order or judgment of the Bankruptcy Court:  (a) as to which the time to appeal, petition for certiorari, move for retrial, or seek other review or reconsideration has expired and as to which no appeal, petition for certiorari, motion for retrial or other proceeding for review or reconsideration is pending; (b) as to which any right to appeal, to petition for certiorari, to move for retrial, or to seek other review or reconsideration has been waived in writing in form and substance satisfactory to the Debtor; or (c) as to which, if an appeal, writ of certiorari, retrial or other review or reconsideration has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed or from which such relief was sought or such court has denied such appeal or such relief and the time to take any further appeal, petition for certiorari, move for retrial or seek other review or reconsideration has expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous

6

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

rule under the Bankruptcy Rules, may be filed with respect to such order does not prevent such order from being a Final Order.

**1.55. FDIC**.  The Federal Deposit Insurance Corporation, in its capacity as receiver for Franklin, and any of its successors and assigns.

**1.56. Franklin**.  Franklin Bank, S.S.B.

**1.57. Franklin Building Six Order**.  A Final Order (if any) holding that the Liens securing the Franklin Secured Claims in respect of Building Six are senior to those of the Building Six Lenders in respect of Building Six.

**1.58. Franklin Secured Claims**.  All of the Secured Claims of Franklin against the Debtor under the Franklin Loan Documents, which shall be in an amount equal to the Franklin Collateral Value.

**1.59. Franklin Collateral**.  The collateral granted to Franklin pursuant to the Franklin Loan Documents, including, without limitation the Franklin Deed of Trust.

**1.60. Franklin Collateral Documents**.  Collectively, the Franklin Deed of Trust and any other agreements indicating the Liens of Franklin on the Franklin Collateral.

**1.61. Franklin Collateral Value**.  Has the meaning set forth in Section 5.2.

**1.62. Franklin Deed of Trust**.  The Deed of Trust, Security Agreement and Assignment of Rents dated as of February 28, 2006 by and between Franklin and the Debtor securing the obligations of the Debtor under the Franklin Loan Documents, including the Franklin Loan Agreement and Franklin Note.

**1.63. Franklin Deficiency Claims**.  Any Claims of Franklin against the Debtor under the Franklin Loan Documents other than the Franklin Secured Claims.

**1.64. Franklin Guarantees**.  The guarantees executed by Mark Doppe and Rhapsody in connection with the Franklin Loan Documents.

**1.65. Franklin Guarantors**.  The guarantors that executed the Franklin Guarantees.

**1.66. Franklin Loan Agreement**.  The Loan Agreement dated as of February 28, 2006 by and between Franklin and the Debtor.

7

**1.67.  Franklin Loan Documents**.   The Franklin Loan Agreement, the Franklin Note, the Franklin Deed of Trust, the Franklin Guarantees and any other agreements, documents, financing statements and instruments executed in connection therewith.

**1.68.  Franklin Note**.  The promissory noted issued by the Debtor in favor of Franklin in connection with the Franklin Loan Agreement.

**1.69.  Galadriel**.  Galadriel, LLC, a Washington limited liability company in its capacity as the holder of New Galadriel Membership Interests.

**1.70.  General Unsecured Claims**.  All Claims against the Debtor other than Administrative Claims, the Property Tax Claims, the Franklin Secured Claims, the Terra Secured Claims (if any), the Select Build Secured Claims (if any), Insider Claims and the Building Six Secured Claims (if any).  General Unsecured Claims include, without limitation, the Consolidated Subordinated Note Claims, the Franklin Deficiency Claim and the Building Six Deficiency Claims.

**1.71.  General Unsecured Creditors**.  General Unsecured Creditors are creditors holding General Unsecured Claims.

**1.72.  Governmental Unit**.  Has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.73.  Governmental Unit Claims Bar Date**.  The deadline for filing proofs of claim by a Governmental Unit.

**1.74.  Guarantees**.  Collectively, the Building Six Guarantees, the Consolidated Guarantees and the Franklin Guarantees.

**1.75.  Guarantors**.  Collectively, the Building Six Guarantors, the Consolidated Guarantors and the Franklin Guarantors.

**1.76.  Insider Claims**.  All Claims of insiders or affiliates of insiders arising on or before the Effective Date, other than DIP Claims and Claims purchased from non-insider third parties.

**1.77.  Lenders**.  Collectively, the Consolidated Lenders, the Building Six Lenders and Franklin.

8

**1.78. Lien**.  A lien as defined in section 101(37) of the Bankruptcy Code, except a lien that has been avoided in accordance with sections 506, 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code.

**1.79. Loan Documents**.  Collectively, the Building Six Loan Documents, the Consolidated Subordinated Loan Documents and the Franklin Loan Documents.

**1.80. Local Rules**.  The local rules of the United States Bankruptcy Court for the District of Nevada governing proceedings in this Chapter 11 Case.

**1.81. Lock Box Account**.  Has the meaning set forth in Section 5.6.1.

**1.82. New Building Six Note**.  A promissory note in the amount of the Building Six Secured Claims to be issued by the Debtor to the Building Six Lenders upon the issuance of a Consolidated Building Six Order on the terms and conditions set forth on Exhibit A.

**1.83. New Creditor Membership Interests**.  The membership interests in the Debtor to be granted to the Plan Trust under the Plan constituting 58.3% of the membership interests of the reorganized Debtor, subject to the terms of Section 5.4 of the Plan.

**1.84. New Franklin Deed of Trust**.  A new deed of trust, which shall evidence the Liens securing the New Franklin Note.

**1.85. New Franklin Note**.  A promissory note in the amount of $17,450,000, as may be adjusted as set in Section 5.2, on the terms and conditions set forth on Exhibit B.

**1.86. New Galadriel Membership Interests**.  The membership interests in the Debtor containing to be granted to Galadriel under the Plan constituting 41.7% of the membership interests of the reorganized Debtor, subject to the terms of Section 5.4 of the Plan.

**1.87. New Membership Interests**.  The New Creditor Membership Interests and the New Galadriel Membership Interests, in each case to be issued under the Plan.

**1.88. Old Membership Interests**.  The membership units in the Debtor issued prior to the confirmation of the Plan.

**1.89. Person**.  Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other

9

"person" as defined in section 101(41) of the Bankruptcy Code as well as any governmental agency, Governmental Unit or associated political subdivision.

**1.90.  Petition Date**.  The date upon the Debtor files a petition for relief under chapter 11 of the Bankruptcy Code.

**1.91.  Plan**.  This plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including, without limitation, all of its annexed exhibits and schedules and the Plan Documents.

**1.92.  Plan Documents**.  The New Franklin Note, the New Franklin Deed of Trust, the New Building Six Note, the Plan Trust Agreement, the operating agreement applicable to the Debtor after the Effective Date, and all other material documents and agreements required to implement the provisions of the Plan, which, in each case, must be filed with 10 days of the Confirmation Hearing.

**1.93.  Plan Trust**.  The Plan Trust created under the terms of the Plan to hold the New Creditor Membership Interests, any rights associated therewith and the proceeds thereof.

**1.94.  Plan Trust Agreement**.  The trust agreement creating the Plan Trust to be executed in connection with the Plan.

**1.95.  Plan Trustee**.  The Person serving as the trustee of the Plan Trust.  The initial trustee shall be disclosed at least 10 days prior to the commencement of the Confirmation Hearing.

**1.96.  Plan Trust Interests**.  The beneficial interests in the Plan Trust to be issued to General Unsecured Creditors on the Effective Date.

**1.97.  Professionals**.  Those Persons employed in accordance with an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

**1.98.  Professional Fees**.  The Administrative Claims for compensation and reimbursement of expenses of Professionals submitted in accordance with sections 330 or 331 of the Bankruptcy Code, or any Administrative Claims Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

10

**1.99.  Project**.  The project being constructed on the Property by the Debtor pursuant to the Development Agreement.

**1.100.  Property**.  All of the Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code, including, without limitation, any real property owned by the Debtor as of the Confirmation of the Plan.

**1.101.  Property Tax Claims**.  Any Claims of a Governmental Unit for property taxes related to the Property, whether such liability is *in rem*, *in personam* or both.

**1.102.  Pro Rata Share**.  The proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including, without limitation, Disputed Claims that have not been disallowed by a Final Order.

**1.103.  Prudential**.  Prudential CRES Real Estate, the Debtor's real estate broker.

**1.104.  Rhapsody Partners, LLC**.  Rhapsody Partners, LLC, a Nevada limited liability company.

**1.105.  Schedules**.  The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**1.106.  Secured Claim**.  (a) A Claim against the Debtor secured by a Lien on any assets, which Lien is valid, perfected, and enforceable under applicable law and is not void or subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Case, but only to the extent of the value of the holder's interest in the Debtor's interest in the assets that secure payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the amount of any such Secured Claim is less than the amount of the Claim which has the benefit of any such Lien or right of recoupment or setoff, the

11

balance of such Claim shall be treated as a General Unsecured Claim.

**1.107.  Select Build**.  Selectbuild Nevada, Inc., a Nevada corporation.

**1.108.  Select Build Promissory Note**.  A promissory note to be issued by the Debtor to Select Build under the Plan in the principal amount of the Select Build Secured Claim containing the terms set forth in Exhibit C.

**1.109.  Select Build Secured Claim**.  The Secured Claim of Select Build against the Debtor.

**1.110.  Tennant Improvement Account**.  Has the meaning set forth in Section 5.6.2.

**1.111.  Terra Contracting**.  Terra Contracting, Inc.

**1.112.  Terra Promissory Note**.  A promissory note to be issued by the Debtor to Terra Contracting under the Plan in the principal amount of the Terra Secured Claim containing the terms set forth on Exhibit C.

**1.113.  Terra Secured Claim**.  The Secured Claim of Terra Contracting against the Debtor.

**1.114.  Valtus**.  Valtus Capital Advisors, the Debtor's financial advisor.

## ARTICLE  2.  TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.  Unclassified Claims**.  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims instead are treated separately in accordance with this Article 2 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.  Administrative Claims**.

**2.2.1.  Generally**.  Each Administrative Claim other than a Claim for Professional Fees and a DIP Claim shall be paid in full in Cash by the Debtor on the later to occur of (a) the Effective Date; (b) the tenth (10th) day after such Administrative Claim is Allowed; and (c) such date as the holder of any such Administrative Claim and the Debtor may agree.

**2.2.2.  Requests for Payment**.  All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative

Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor.

**2.3.  Claims for Professional Fees**.  Each Person seeking an award by the Bankruptcy Court of Professional Fees (other than Valtus and Prudential) must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date.  Any such award granted by the Bankruptcy Court shall be paid by Galadriel from its own funds on whatever terms and conditions as may be agreed to by Galadriel and the applicant and may not be paid from any prepetition or postpetition collateral securing the Franklin Note, the New Franklin Note, the Building Six Note or the New Building Six Note.  All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

**2.4.  Valtus and Prudential**.  Notwithstanding anything set forth in the Plan, Professional Fees owed to Valtus and Prudential shall be paid pursuant to the terms of each such Person's Bankruptcy Court approved retention letter, as required by section 328(a) of the Bankruptcy Code; provided, that any Professional Fees owed to Valtus shall be paid by Galadriel from its own funds on whatever terms and conditions as may be agreed to by Galadriel and Valtus and may not be paid from any prepetition or postpetition collateral securing the Franklin Note, the New Franklin Note, the Building Six Note or the New Building Six Note.

**2.5.  Post-Effective Date Professional Fees**.  All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date may be paid by the Debtor upon receipt of an invoice for such services, or on such other terms to which the Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

LOSANGELES 846010 (2K)

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

**2.6.  Debtor-in-Possession Loan Claims**.  On the Effective Date, the DIP Claims shall be paid in full through the issuance of the New Galadriel Membership Interests to the DIP Lender as provided in Section 5.4.

### ARTICLE  3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of equity interests, including holders of Old Membership Interests are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class 1 | Property Tax Claims | Unimpaired, deemed to accept |
| Class 2 | Terra Secured Claims | Impaired, entitled to vote |
| Class 3 | Select Build Secured Claims | Impaired, entitled to vote |
| Class 4 | Franklin Secured Claims | Impaired, entitled to vote |
| Class 5 | Building Six Secured Claims | Impaired, entitled to vote |
| Class 6 | General Unsecured Claims | Impaired, entitled to vote |
| Class 7 | Insider Claims | Impaired, entitled to vote |
| Class 8 | Old Membership Interests | Impaired, deemed to reject |

### ARTICLE  4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1.  Class 1 – Property Tax Claims**.

**4.1.1.  Impairment and Voting**.  Class 1 consists of Property Tax Claims.  Property Tax Claims are unimpaired by the Plan; consequently, the holders of Property Tax Claims are deemed to have accepted the Plan.

**4.1.2.  Treatment**.  On the later to occur of the Effective Date or the date upon which a Property Tax Claim becomes allowed, holders of Allowed Property Tax Claims will receive either (a) Cash in the amount of their Allowed Property Tax Claims plus interest at the applicable statutory rate or (b) such other treatment as may be agreed to by the Debtor and such holders; <u>provided</u>, that the present value of the property received or retained pursuant to such other treatment cannot exceed the present value of such Allowed Property Tax Claims.

14

**4.2.  Class 2 – Terra Secured Claims**.

      **4.2.1.  Impairment and Voting**.  Class 2 consists of the Terra Secured Claims.  The Terra Secured Claims are impaired by the Plan; consequently, the holders of Terra Secured Claims are entitled to vote on the Plan.

      **4.2.2.  Treatment**.  On the Distribution Date, the holder of an Allowed Terra Secured Claim shall receive the Terra Promissory Note in full and complete satisfaction of the Allowed Terra Secured Claim and shall retain all Liens securing such Allowed Terra Secured Claim as security for payment of the Terra Promissory Note.  The Terra Secured Claims are currently disputed.  Accordingly, the Distribution Date in respect of the Terra Secured Claim shall only occur in the event that the Bankruptcy Court determines, through a Final Order, that the Terra Secured Claim is an Allowed Secured Claim.

**4.3.  Class 3 – Select Build Secured Claims**

      **4.3.1.  Impairment and Voting**.  Class 3 consists of the Select Build Secured Claims.  The Select Build Secured Claims are impaired by the Plan; consequently, the holders of Select Build Secured Claims are entitled to vote on the Plan.

      **4.3.2.  Treatment**.  On the Distribution Date, the holder of an Allowed Select Build Secured Claim shall receive the Select Build Promissory Note in full and complete satisfaction of the Allowed Select Build Secured Claim and shall retain all Liens securing such Allowed Select Build Secured Claim as security for payment of the Select Build Promissory Note.  The Select Build Secured Claims are currently disputed.  Accordingly, the Distribution Date in respect of the Select Build Secured Claim shall only occur in the event that the Bankruptcy Court determines, through a Final Order, that the Select Build Secured Claim is an Allowed Secured Claim.

**4.4.  Class 4 – Franklin Secured Claims**.

      **4.4.1.  Impairment and Voting**.  Class 4 consists of the Franklin Secured Claims. The Franklin Secured Claims are impaired by the Plan; consequently, the holders of Franklin Secured Claims are entitled to vote on the Plan.

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

**4.4.2.  Treatment**.  On the Effective Date, the FDIC, as holder of the Allowed Franklin Secured Claims, shall receive in full and complete satisfaction of the Debtor's obligations with respect to the Allowed Franklin Secured Claims, the New Franklin Note.  The FDIC shall retain all Liens upon the Franklin Collateral securing the Allowed Franklin Secured Claims as security for the New Franklin Note.  Such Liens shall be evidenced by the New Franklin Deed of Trust, which shall contain commercially reasonable covenants and warranties acceptable to the FDIC.  Without limiting the generality of the foregoing, the New Franklin Deed of Trust and the New Franklin Note shall contain "due on sale" and "due on refinance" provisions.  In addition to the foregoing, the FDIC and Franklin shall be released from all Claims the Debtor may have against Franklin, including, without limitation, a release of any Avoidance Actions.

**4.5.  Class 5 – Building Six Secured Claims**.

**4.5.1.  Impairment and Voting**.  Class 5 consists of the Building Six Secured Claims.  Building Six Secured Claims are impaired by the Plan; consequently, the holders of Building Six Secured Claims are entitled to vote on the Plan.

**4.5.2.  Treatment**.  On the Distribution Date, each holder of an Allowed Building Six Claim shall receive, in complete satisfaction of such Allowed Claim, an interest in the New Building Six Note equal to its Pro Rata Share of the Building Six Secured Claims.

**4.6.  Class 6 – General Unsecured Claims**.

**4.6.1.  Impairment and Voting**.  Class 6 consists of General Unsecured Claims.  General Unsecured Claims are impaired by the Plan; consequently, the holders of General Unsecured Claims are entitled to vote on the Plan.

**4.6.2.  Treatment**.  On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in complete satisfaction of such Allowed Claim, its Pro Rata Share of the Plan Trust Interests.

**4.7.  Class 7 – Insider Claims.**

**4.7.1.  Impairment and Voting**.  Class 7 consists of Insider Claims.  Insider Claims are impaired by the Plan; consequently, the holders of Insider Claims are entitled to vote on the Plan.

16

**4.7.2.  Treatment**.  On the Effective Date, all Allowed Insider Claims shall be satisfied in full through the issuance of New Galadriel Membership Interests to Galadriel pursuant to Section 5.4 of the Plan.  As a result, and among other things, holders of Allowed Insider Claims shall receive no distributions on account of their Claims until such time as the Plan Trustee shall have received an amount equal to the amount of all Allowed Claims in Class 5.

**4.8.  Class 8 - Equity Interests**.

**4.8.1.  Impairment and Voting**.  Class 8 consists of the Old Membership Interests. Holders of Old Membership Interests will neither receive nor retain property under the Plan on account of their Old Membership Interests; consequently, the holders of Old Membership Interests are deemed to reject the Plan.

**4.8.2.  Treatment**.  On the Effective Date, the Old Membership Interests shall be cancelled and the holders of Old Membership Interests shall neither receive nor retain any property under the Plan.

## ARTICLE 5.  IMPLEMENTATION OF THE PLAN

**5.1.  Certain Cash Contributions**.  On the Effective Date, Galadriel shall contribute sufficient Cash for the Debtor to pay and/or fund Allowed Administrative Claims and Allowed Property Tax Claims.

**5.2.  Matters Relating to Franklin**.

**5.2.1.**  On the Effective Date, the Franklin Secured Claims and the Franklin Deficiency Claims shall be deemed Allowed and treated as set forth in the Plan, including, without limitation, as set forth in Section 4.2.2 and this Section 5.2.

**5.2.2.**  The Debtor and the FDIC have agreed, by way of settlement, that the value of the Franklin Collateral shall be $17,450,000 minus the amount of any and all Allowed Terra Secured Claims, Allowed Select Build Secured Claims and Allowed Building Six Secured Claims (the "Franklin Collateral Value").  The entry of the Confirmation Order shall approve such settlement and shall constitute a finding by the Bankruptcy Court that such settlement is reasonable, was entered into in good faith and is in the best interests of the estate.

17

**5.2.3.** The principal amount of the New Franklin Note shall equal the Franklin Collateral Value but shall be subject to the following procedures: On the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall issue the New Franklin Note to the FDIC in the principal amount of $17,450,000. Thereafter, the principal amount of the New Franklin Note shall be reduced, retroactive to the Effective Date, by the amount of any and all Allowed Terra Secured Claims, Allowed Select Build Secured Claims and Allowed Building Six Secured Claims when and if such Claims are Allowed. If the principal amount of the New Franklin Note is reduced as set forth in this Section 5.2.3, the FDIC shall recalculate the amount of interest due under the New Franklin Note and any of amount of interest paid by the Debtor that would not have been due and payable under the reduced principal amount of the New Franklin Note shall be applied to principal.

**5.2.4.** The Debtor shall also execute and record the New Franklin Deed of Trust and the FDIC shall retain all of its Liens under the Franklin Collateral Documents to secure the obligations of the Debtor under the New Franklin Note.

**5.3. Issuance of Building Six Note**. On the Effective Date, the Debtor shall issue the New Building Six Note and shall make all payments in respect of such note into a segregated account to be established by the Debtor on the Effective Date (the "New Building Six Note Escrow Account"). Within three (3) Business Days of the entry of a Consolidated Building Six Order, the Debtor shall deliver the New Building Six Note to the Building Six Lenders along with all of the proceeds in the New Building Six Note Escrow Account. In the alternative, upon the entry of the Franklin Building Six Order, the Debtor shall (a) cancel the New Building Six Note and (b) deliver the proceeds in the New Building Six Note Escrow Account to the Tenant Improvement Account (as defined below). If the New Building Six Note is delivered to the Building Six Lenders, such note shall be secured by the Liens of the Building Six Lenders under the Building Six Deed of Trust with the same priority as the existing Secured Claims of the Building Six Lenders as determined by the Consolidated Building Six Order.

18

**5.4. Issuance of New Membership Interests in Debtor**.  On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall issue the New Creditor Membership Interests to the Plan Trust as provided for in the Plan.  On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall issue the New Galadriel Membership Interests to Galadriel as provided for in the Plan.  The New Galadriel Membership Interests shall be issued to Galadriel as payment of the DIP Claims and Insider Claims, in exchange for the capital contributions described in Section 5.1 of the Plan and on account of Galadriel's agreement to pay property taxes and other carry costs in respect of the Property and make a one-time $13,000 contribution to the Plan Trust.  Upon the entry of the Confirmation Order, all Old Membership Interests shall be deemed cancelled without further order of the Bankruptcy Court.

**5.5. Management of Debtor**.

**5.5.1. The Manager**.  On and after the Effective Date, the Debtor shall adopt an operating agreement which shall provide that the management of the Debtor shall be exclusively vested in Anduril and that Anduril shall have full and sole responsibility for the day-to-day business and affairs of the Company; provided, that the Debtor shall not (a) sell or refinance the Property except as permitted in the New Franklin Note or (b) enter into any new leases or materially modify any existing leases, in each case, without the approval of the FDIC; provided, further, that the Debtor shall not wind-up the Debtor or file a bankruptcy or insolvency proceeding under the Bankruptcy Code or any similar state law without the affirmative vote of the Plan Trustee and until such time as the holders of Plan Trust Interests shall have received Distributions from the Plan Trust in an amount equal to the amount of their respective Allowed Claims.  In the interest of clarity and without limiting the generality of the foregoing, the Plan Trustee shall have no ability to control or direct the activities of the Debtor, except as set forth in this Section 5.5.1.

**5.5.2. Distributions**.  The operating agreement of the reorganized Debtor shall provide that all distributions on account of the New Membership Interests shall be made first to the Plan Trustee on account of the New Creditor Membership Interests until such time as the Plan

Trustee shall have received an amount equal to the amount of all Allowed General Unsecured Claims, <u>second</u> to the holders of New Galadriel Membership Interests until such time as such holders shall have received an amount equal to $5,050,000 and, <u>third</u>, 58.3% to the Plan Trustee on account of the New Creditor Membership Interests and 41.7% to the holders of New Galadriel Membership Interests on account of such interests.

**5.6.    Cash Collateral Provisions**.

**5.6.1.**    Except as set forth in Section 5.6.2 below and as required for the Debtor to make payments under the New Building Six Note, the Select Build Promissory Note and the Terra Promissory Note, all funds generated by the Debtor shall be promptly deposited into a lock box account (the "<u>Lock Box Account</u>").  The FDIC shall have a first priority security interest in the Lock Box Account to secure the obligations of the Debtor under the New Franklin Note.  The Debtor shall execute a control agreement in favor of the FDIC and such other documents as requested by the FDIC to memorialize cash management procedures consistent with this Section 5.6.1 and to create and perfect such security interest in the Lock Box Account.  The funds in the Lock Box Account shall be used by the Debtor to fund operating expenditures and payments in respect of the New Franklin Note; <u>provided</u> that the payments shall be approved by the FDIC prior to being paid by the Debtor; <u>provided</u>, that such approval shall not be unreasonably withheld; <u>provided</u>, <u>further</u>, that the Debtor may make payments required under the New Building Six Note, the Select Build Promissory Note and the Terra Promissory Note (if any) without FDIC consent.

**5.6.2.**    The first $300,000 of Cash generated by the Debtor net of reasonable operating expenses shall be promptly deposited into a cash collateral account (the "<u>Tenant Improvement Account</u>") for the purpose of funding tenant improvements in respect of the Property; <u>provided</u>, that such expenditures shall be approved by the FDIC prior to being paid by the Debtor with such approval to not be unreasonably withheld; <u>provided</u>, <u>further</u>, that the proceeds in the Tenant Improvement Account shall be used first to pay interest in respect of the New Franklin Note if such interest is not otherwise paid by the Debtor when due.  The FDIC shall have a first priority security interest in and to the Tenant Improvement Account.  The Debtor shall execute a control agreement in

20

favor of the FDIC and such other documents as requested by the FDIC to create and perfect such first priority security interest in and to the Tenant Improvement Account.  When draws against the Tenant Improvement Account cause the balance in such account to fall below $300,000, the next cash generated by the Debtor, net of reasonable operating expenses (including interest payable in respect of the New Franklin Note), shall be promptly deposited in the Tenant Improvement Account until the balance of such account again reaches $300,000; provided, that the aggregate funding of such account shall not exceed $800,000.

**5.6.3.**  All funds generated by the Debtor which are not used to pay operating expenses or to fund the Tenant Improvement Account shall be used to pay the New Franklin Note.

**5.7.  Release and avoidance of Liens**.  The Plan shall constitute a motion pursuant to section 506(d) of the Bankruptcy Code to void any Liens on the Property that do not secure an Allowed Secured Claim.  A list of all such voided Liens shall be filed with the Bankruptcy Code at least ten (10) days prior to Confirmation and shall be served upon any known holders thereof.  Further, pursuant to section 1142(b) of the Bankruptcy Code, the entry of the Confirmation Order shall constitute a direction by the Bankruptcy Court to the holders of all voided Liens to execute the documents necessary to release such voided Liens without further order of the Bankruptcy Court.

**5.8.  Certain Tax Provisions**.  Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

**5.9.  Issuance of New Membership Interests**.  Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of the New Membership Interests. In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the

21

offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

**5.10.  Post-confirmation matters**.  Except as otherwise set forth in the Plan, on and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor (as reorganized hereby) shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims; (b) settle, resolve and object to Claims; (c) pay all fees payable under 28 U.S.C. § 1930; (d) file any post-Confirmation reports required by the Bankruptcy Code or the Bankruptcy Court; (e) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; (f) do all things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules;  and (g) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Chapter 11 Case.  The Debtor, in its capacity as estate representative, shall comply with all withholding and reporting requirements imposed upon it by any Governmental Unit under applicable law and all Distributions shall be subject to such withholding and reporting requirements, if any.

**5.11.  Certain Provisions Concerning Guarantees**.  Nothing in the Plan shall impair or modify the rights or defenses of the FDIC, the Debtor or any Guarantors under, in connection with, or related to the Franklin Guarantees.  The Debtor expressly acknowledges that nothing in this Plan, including, without limitation, the provisions of Section 4.2.2, Section 5.6 and Section 5.15, is intended to satisfy any of the obligations that the Franklin Guarantors may have under or in connection with the Franklin Guarantees.  Without limiting the generality of the foregoing, the FDIC shall be entitled to enforce its rights under its guarantees and the Guarantors and the Debtor shall be

22

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

entitled to assert any defenses or rights they may have to limit or prevent such enforcement, in each case as if this Plan had not been confirmed.

### 5.12.  The Plan Trust

**5.12.1.  Creation of Plan Trust.**  On the Effective Date, the Plan Trust will be created pursuant to the Plan Trust Agreement and shall issue the Plan Trust Interests to the General Unsecured Creditors.  The Plan Trust shall be administered by the Plan Trustee.  The appointment of the initial Plan Trustee and the terms of its compensation shall be subject to the approval of the Bankruptcy Court.  Galadriel shall advance the Plan Trustee $13,000 to pay the reasonable costs and expenses associated with the administration of the Plan Trust.

**5.12.2.  Property of the Plan Trust**.  As contemplated by Section 5.4, the New Creditor Membership Interests shall be issued to the Plan Trust on the Effective Date.  The New Creditor Membership Interests, any rights associated therewith, the proceeds thereof and the $13,000 contribution made by Galadriel to the Plan Trust shall be the sole assets of the Plan Trust.  Any dividends payable by the Debtor in respect of the Creditor Membership Interests shall be made as permitted by applicable law and the New Franklin Note.

**5.12.3.  Duties of Plan Trustee**.  Subject to the terms and provisions of the Plan Trust Agreement, the Plan Trustee shall have the duty and authority to take all actions deemed by the Plan Trustee to be necessary or appropriate (a) to protect, maintain, liquidate to Cash, and maximize the value of the New Creditor Membership Interests and (b) to prepare and make available to the holders of beneficial interests in the Plan Trust periodic reports regarding the results of the Plan Trust's operations.

**5.12.4.  Exculpation.**  The Plan Trustee, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and equity interests, and parties in interest, from any and all claims, arising out of the discharge of the powers and duties conferred upon the Plan Trustee by the Plan Trust Agreement, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Plan Trustee's gross

23

negligence or willful misconduct.  No holder of a Claim or an equity interest, or representative thereof, shall have or pursue any Claim against the Plan Trustee or its officers, directors, employees, agents, and representatives for making payments in accordance with the Plan Trust Agreement, or for liquidating assets to make payments under the Plan Trust Agreement.

**5.13.  Corporate Authority.**  The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including, without limitation, any action required by holders of Old Membership Interests, including the adoption of the new operating agreements and the transfer of Property under the Plan.

**5.14.  Modification of Subordination**.  Notwithstanding anything in section 510(a) of the Bankruptcy Code or to the contrary in the Consolidated Subordination Agreement, Galadriel, as the assignee of the Consolidated Lender pursuant to the Consolidated Settlement, shall be entitled to receive its Pro Rata Share of the Plan Trust Interests under the Plan and keep any distributions made by the Debtor in respect thereof.  Except as set forth in the immediately preceding sentence nothing in the Plan, any Plan Document or the Confirmation Order shall modify, alter, release or impair the rights of the FDIC, the Consolidated Lender or the Building Six Lenders under or in respect of the Consolidated Subordination Agreement.  Any payments received by the Building Six Lenders under or in respect of the New Building Six Note are not and shall not be subject to the Consolidated Subordination Agreement.

**5.15.  Certain Provisions Regarding the Franklin Deficiency Claim**.  In the event that the Consolidated Lender shall vote in favor of the Plan, the FDIC shall be deemed to waive its right to receive any distributions from the Debtor or its property under the Plan or otherwise with respect to the Franklin Deficiency Claim.  Such waiver, if any, is not intended and shall not be deemed to

satisfy any of the obligations that the Franklin Guarantors may have under or in connection with the Franklin Guarantees to satisfy the Franklin Deficiency Claim.

**5.16.  Consolidated Settlement**.  The Consolidated Settlement shall be incorporated into this Plan by reference.  To the extent there is any conflict between the Consolidated Settlement Agreement and the Plan, the Consolidated Settlement Agreement shall govern.

## ARTICLE  6.  CONDITIONS PRECEDENT

**6.1.  Condition to Confirmation**.  It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor.

**6.2.  Conditions to Effectiveness**.  The following are conditions precedent to the occurrence of the Effective Date:

(a)      the Confirmation Date shall have occurred;

(b)      the Confirmation Order shall have been entered and shall be a Final Order;

(c)      no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

(d)      the New Franklin Note and the New Franklin Deed of Trust shall be in form and substance satisfactory to the FDIC and shall be executed and delivered by the Debtor

(e)      the Plan Trustee shall be an individual reasonably satisfactory to the FDIC; and

(f)      the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan.

**6.3.  Waiver of Conditions**.  Conditions to Confirmation and the occurrence of the Effective Date may be waived in whole or in part by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

**6.4.  Failure of Conditions**.  If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed.

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of any parties in interest, including, without limitation, the Debtor, the FDIC, Consolidated, the Consolidated Lenders and the Building Six Lenders.

## ARTICLE 7.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1.  Rejection of Executory Contracts and Unexpired Leases.**  Except as set forth in Section 7.3, all unexpired leases and executory contracts of the Debtor, other than those set forth on Schedule 7.2 hereto, shall be rejected by the Debtor as of the Effective Date pursuant to Section 365(a) of the Bankruptcy Code.  The Plan shall constitute a motion to reject the executory contracts and unexpired leases rejected pursuant to this section, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its estate.

**7.2.  Assumed Contracts**.  The Plan shall constitute a motion to assume such executory contracts and unexpired leases as set forth in Schedule 7.2.  Entry of the Confirmation Order shall constitute approval of such assumption pursuant to sections 365(a) and (b) of the Bankruptcy Code.  Any non-Debtor counterparty to an agreement listed on Schedule 7.2 who disputes the assumption of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the assumption, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing.  The failure to timely object shall be deemed a waiver of any and all objections to the assumption of executory contracts and leases as set forth in Schedule 7.2.

**7.3.  Bar Date.**  All proofs of claim with respect to Claims arising from the rejection of any unexpired lease or executory contracts pursuant to Section 7.1 of the Plan shall be filed with the Bankruptcy Court and served on Debtor's counsel no later than thirty (30) days after the Effective Date.  The holder of any Claim not filed within such time shall be forever barred from asserting any

such Claim or receiving any Distribution on account of such Claim. Any Claims resulting from the rejection of executory contracts shall be classified as General Unsecured Claims for purposes of the Plan.

## ARTICLE 8.  DISPUTED CLAIMS

**8.1.  Objection Deadlines.**  Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served on the holders of such Administrative Claims and Claims not later than thirty (30) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via *ex parte* request.

**8.2.  Prosecution of Disputed Claims.**  The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 13.1.

**8.3.  Entitlement to Plan Distributions upon Allowance.**  Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE 9.  EFFECT OF CONFIRMATION

**9.1.  Revesting of Assets**.  Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property, shall vest in the Debtor on the Effective Date.  As of the Effective Date, and except as otherwise provided in the Plan and the Confirmation Order, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any Claims and Liens arising from the Loan Documents and the Old Membership Interests to the fullest extent permitted

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

by section 1141(c) of the Bankruptcy Code.  From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the Plan, or the Confirmation Order.

**9.2.  Discharge**.  Except as provided in the Plan, including, without limitation, in Sections 5.11 and 5.15, or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and equity interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims.  Except as provided in the Plan or the Confirmation Order, Confirmation discharges the Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

**9.3.  Judgments Void**.  Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court shall be null and void as a determination of the liability of the Debtor with respect to any debt treated by the Plan.

## ARTICLE  10.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the Plan including, without limitation, matters or proceedings that relate to:

(a)    allowance, disallowance, determination, liquidation, classification, estimation, or establishment of the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)    requests for payment of Claims entitled to priority under section 507(a) of the Bankruptcy Code, including, without limitation, compensation and reimbursement of expenses for

28

Professionals to the extent Bankruptcy Court approval therefore is required under the Plan or the Confirmation Order;

(c)     the title, rights or interests of the Debtor in any property, including, without limitation, the Property and the recovery of all assets and property of the Estate wherever located;

(d)     any right, power, action, or duty of the Debtor;

(e)     any determination or estimation necessary or appropriate under section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor for periods through the end of the fiscal year in which the Effective Date occurs, including, without limitation, the determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor;

(f)     ensuring that Distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(g)     resolution of controversies and disputes, including, without limitation, the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(h)     resolution of any motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor that may be pending on the Effective Date;

(i)     entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(j)     modification of the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or any contract, instrument, release, or other agreement or document created in connection with the Plan; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

29

(k)     the entry of an order including injunctions necessary to enforce the title, rights, and powers of the Debtor and the purposes and intent of the Plan, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(l)     implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan, including, without limitation, appropriate orders to protect the Debtor from actions by holders of Claims, or (ii) as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m)     determination of any other matters that (i) may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order except as otherwise provided in the Plan, or (ii) are otherwise provided under the Bankruptcy Code or other applicable law; and

(n)     entry of a Final Decree closing the Chapter 11 Case, including, without limitation, provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and for retention of jurisdiction for the Bankruptcy Court for purposes of this Article 10.

## ARTICLE 11.  AMENDMENT AND WITHDRAWAL OF PLAN

**11.1.  Amendment of the Plan**.  At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class.  After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan;

30

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

1    provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy

2    Rules or applicable order of the Bankruptcy Court.

3        **11.2. Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or

4    withdraw the Plan at any time and for any reason before the Confirmation Date.  If the Plan is

5    withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the

6    Plan or any Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any

7    other Person in any further proceedings involving the Debtor.

8            **ARTICLE  12.  ACCEPTANCE OR REJECTION OF THE PLAN**

9        **12.1. Impaired Classes to Vote**.  Each holder of a Claim or equity interest in an impaired

10   Class shall be entitled to vote separately to accept or reject the Plan unless such holder is deemed to

11   accept or reject the Plan.

12       **12.2. Acceptance by Class of Creditors**.  An impaired Class of holders of Claims shall

13   have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and

14   more than one-half in number of the Allowed Claims of such Class that have voted to accept or

15   reject the Plan.

16               **ARTICLE  13.  MISCELLANEOUS**

17       **13.1. Settlement of Objections after Effective Date**.  From and after the Effective Date,

18   the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements

19   of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise

20   any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

21       **13.2. Holding of, and Failure to Claim, Undeliverable Distributions**.  All Distributions are

22   to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address

23   of such holder listed on the Schedules or proof of claim filed by such holder at the time of such

24   Distribution.  If any holder's Distribution is returned as undeliverable, no further Distributions to

25   such holder shall be made unless and until the Debtor is notified of such holder's then current

26   address, at which time all required Distributions shall be made to such holder.  Undeliverable

27   Distributions shall be held by the Debtor until such Distributions are claimed.  All Claims for

28                                                          31

undeliverable Distributions must be made within ninety (90) days following a Distribution.  After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

**13.3.  Post-Effective Date Distributions**.  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**13.4.  Fractional Amounts**.  Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

**13.5.  Ex Parte Relief**.  Upon *ex parte* motion by the Debtor after the Confirmation Date after the Effective Date, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

**13.6.  Exculpation**.  The Debtor and its respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

**13.7.  Binding Effect**.  The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

**13.8.  Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

LOSANGELES 846010 (2K)

**13.9.  Modification of Payment Terms**.  At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

**13.10.  United States Trustee Fees**.  The Debtor shall pay all quarterly fees payable to the Office of the United States Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

**13.11.  Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**13.12.  Final Decree**.  After the Estate is fully administered, the Debtor shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

**13.13.  No Admissions**.  AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY

33

1 | INTERESTS IN, THE DEBTOR, AS A DEBTOR AND DEBTOR-IN-POSSESSION IN THIS

2 | CHAPTER 11 CASE.

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

1     IN WITNESS WHEREOF, the Debtor caused the Plan to be executed as of December 21,

2   2009.

3                                     VCSP, LLC, a debtor and debtor-in-possession

4
                                      By: /s/ Mark Doppe_____
5                                          Name: Mark Doppe
                                           Title: Responsible Person
6
                                      Georganne W. Bradley
7                                     Kaempfer Crowell Renshaw Gronauer & Fiorentino
                                      8345 West Sunset Road, Suite 250
8                                     Las Vegas, NV 89113

9                                     and

10                                    /s/ Roberto J. Kampfner_____
                                      Roberto J. Kampfner
11                                    Melanie C. Scott
                                      White & Case LLP
12                                    633 West Fifth Street, Suite 1900
                                      Los Angeles, CA 90071
13
                                      Attorneys for Debtor and Debtor-In-Possession
14                                    VCSP, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## TERMS OF NEW BUILDING SIX NOTE

- <u>Borrower</u>:  Reorganized VCSP.

- <u>Principal Amount</u>:  The principal amount of the New Building Six Note shall be $996,000.

- <u>Collateral</u>:  The New Building Six Note shall be secured by the Liens upon Building Six granted under the Building Six Loan Documents.

- <u>Term</u>:  4 years from the effective date of the Plan.

- <u>Interest Rate</u>:  The interest rate shall be the prime rate quoted by the Wall Street Journal on the effective date of the Plan and shall be payable in cash on a monthly basis commencing on the first day of the month immediately following the Effective Date.

- <u>Principal Payments</u>:  All principal will be paid at maturity.

- <u>Covenants</u>:  The New Building Six Note shall contain standard covenants concerning financial reporting, restrictions on incurrence of additional debt and liens, restrictions on changes of control, and restrictions upon the sale of assets but shall contain no other financial covenants.  Without limiting the generality of the foregoing, the Debtor shall not be permitted to transfer or sell any collateral for the New Building Six Note without the consent of the lender for an amount less than an agreed upon release price.

- <u>Default</u>:  Upon the occurrence of an "Event of Default," the Building Six Lenders shall be entitled to exercise all rights and remedies provided for in the New Building Six Note and any related loan documents, including, without limitation, any collateral documents, and under applicable law, without further order of the Bankruptcy Court..

- <u>Pre-Payment</u>: No restrictions or fees for voluntary prepayments.  Mandatory prepayments if Building Six is sold or refinanced.

**EXHIBIT B**

**TERMS OF THE NEW FRANKLIN NOTE**

- <u>Borrower</u>:  Reorganized VCSP.

- <u>Principal Amount</u>:  Subject to Section 5.2 of the Plan, the principal amount of the New Franklin Note shall be equal to the Franklin Collateral Value.

- <u>Collateral</u>:  The New Franklin Note shall be secured by the Franklin Collateral.

- <u>Term</u>:  5 years from the Effective Date.

- <u>Interest Rate</u>:  Interest shall accrue in respect of the New Franklin Note commencing on the Effective Date.  The interest rate shall be the prime rate of interest quoted in the Wall Street Journal on the Effective Date payable monthly in cash; <u>provided</u>, that no interest payments shall be due in respect of the New Franklin Note until the first anniversary of the Effective Date.

- <u>Principal Payments</u>:  All principal will be paid at maturity.

- <u>Covenants</u>:  The New Franklin Note shall contain standard covenants concerning financial reporting, restrictions on incurrence of additional debt and liens, restrictions on changes of control, and restrictions upon the sale of assets but shall contain no other financial covenants. Without limiting the generality of the foregoing, the Debtor shall not be permitted to transfer or sell any Franklin Collateral without the consent of the FDIC for an amount less than an agreed upon release price.

- <u>Default</u>:  Upon the occurrence of an "Event of Default," the FDIC shall be entitled to exercise all rights and remedies provided for in the New Franklin Note and any related loan documents, including, without limitation, any collateral documents, and under applicable law, without further order of the Bankruptcy Court.

- <u>Change of Control</u>:  It shall be an "Event of Default" under the New Franklin Note for a Change of Control to occur in respect of the Debtor.  A "Change of Control" shall be deemed to have occurred if the Manager of the Debtor ceases to be an entity controlled by Mark Doppe without the consent of the FDIC.

- <u>Release Prices</u>:  The Debtor shall be authorized to sell some or all of the Property constituting "super pads" at a release price of no less than $15 per square foot; provided that all of the proceeds (net of reasonable and customary transaction costs) shall be paid to the holder of the Franklin Note as a mandatory prepayment of the New Franklin Note.  The FDIC shall release its liens upon the Property that is subject to the sale upon receipt of such mandatory prepayment.

- <u>Pre-Payment</u>: No restrictions or fees for voluntary prepayments.  Mandatory prepayments of all net proceeds generated by the sale or refinancing of the Franklin Collateral as provided in

the "due on sale" or "due on refinance" clause to be set forth in the New Franklin Deed of Trust.

- <u>Guarantee</u>:  None.

THIRD AMENDED PLAN OF REORGANIZATION
OF VCSP, LLC DATED DECEMBER 21, 2009

## EXHIBIT C

### TERMS OF THE TERRA/SELECT BUILD PROMISSORY NOTE

- <u>Borrower</u>:  Reorganized VCSP, LLC

- <u>Principal Amount</u>:  An amount equal to the Allowed Terra Secured Claim or the Allowed Select Build Secured Claim, as the case may be.

- <u>Collateral</u>:  The collateral securing the Allowed Terra Secured Claim or the Allowed Select Build Secured Claim, as the case may be.

- <u>Term</u>:  4 years from the Effective Date.

- <u>Interest Rate</u>:  The interest rate shall be 6% per annum.

- <u>Payments</u>:  Interest payments shall be payable on a quarterly basis through the maturity date. Principal payments constituting twenty percent of the principal amount of this note shall be payable in quarterly installments from the third anniversary of the Effective Date through the fourth anniversary of the Effective Date.  Any remaining principal shall be payable on the fourth anniversary of the Effective Date.

- <u>Guarantee</u>:  None.

# EXHIBIT D

## CONSOLIDATED SETTLEMENT AGREEMENT

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (this "Agreement") dated as of September 25, 2009, is entered into by and among Consolidated Mortgage, LLC ( "Consolidated"), VCSP, LLC, a Nevada limited liability company (the "VCSP"), Boulevard Enterprises, LLC, a Nevada limited liability company ("Boulevard, and together with VCSP, the "Debtors"), Mark Doppe ("Doppe"), an individual, Michelle Doppe, an individual, Rhapsody Partners, LLC ("Rhapsody"), a Nevada limited liability company and Galadriel, LLC ("Galadriel"), a Washington limited liability company. Mark Doppe, Michelle Doppe and Rhapsody are referred to herein as the "Guarantors")

## RECITALS

WHEREAS, on February 21, 2006, Consolidated, as servicing agent, and VCSP executed a Business Loan Agreement, loan number 1848 (the "Subordinated Loan Agreement") and certain related loan documents pursuant to which the lender therein (the "Subordinated Lender") agreed to make a loan (the "Subordinated Loan") in the principal amount of $4,090,000 to VCSP to fund the development of a 12.1 acre mixed-use real estate development in Las Vegas, Nevada (the "Project"). The obligations of VCSP under the Subordinated Loan Agreement are secured by all of VCSP's real property other than a building known as "Building Six," (the "Subordinated Loan Collateral") and have been guaranteed by the Guarantors; and

WHEREAS, on or about February 28, 2006, pursuant to a Subordination Agreement (the "Subordination Agreement") entered into between Consolidated and Franklin Bank, SSB, Houston, Texas ("Franklin"), the Subordinated Lender subordinated its interest in the Subordinated Loan Collateral to the interest of Franklin in the collateral pledged pursuant to the loan entered into between Franklin and VCSP; and

WHEREAS, on or about November 7, 2008, the Texas Department of Savings and Mortgage declared Franklin insolvent and appointed the Federal Deposit Insurance Corporation (the "FDIC") as its receiver; and

WHEREAS, on May 20, 2008, Consolidated, as servicing agent, and VCSP executed a Business Loan Agreement, loan number 3086 (the "Building Six Loan Agreement") and certain related loan documents pursuant to which certain lenders (the "Building Six Lenders") agreed to make a loan (the "Building Six Loan") in the principal amount of $1,350,000 to VCSP to fund the Project. The obligations of VCSP under the Building Six Loan Agreement are secured by all of VCSP's right, title and interest in a building located on the Project known as "Building Six," (the "Building Six Collateral") and have been guaranteed by the Guarantors. Consolidated and the FDIC are currently pursuing an adversary proceeding wherein each of Consolidated and the FDIC asserts that it has a first priority position in the Building Six Collateral. The guarantees executed by the Guarantors in favor of the Building Six Lenders are referred to herein as the "Building Six Guarantees"; and

WHEREAS, on November 14, 2007, Consolidated, as servicing agent, and Boulevard executed a Business Loan Agreement, loan number 3066 (the "Boulevard Senior Loan Agreement") and certain related loan documents pursuant to which certain lenders (the "Boulevard Senior Lenders") agreed to make a loan (the "Boulevard Senior Loan") in the principal amount of $650,000 to Boulevard to fund the Project. The obligations of Boulevard under the Boulevard Senior Loan Agreement are secured by the property identified in a Deed of Trust dated November 14, 2007 by and among Boulevard and the Boulevard Senior Lenders (the "Boulevard Senior Collateral"), and includes all of Boulevard's right, title and interest in a series of parcels known as the "Brownstone Parcels" and have been guaranteed by Mark Doppe. The guarantee executed by Mark Doppe in favor of the Boulevard Senior Lenders is referred to herein as the "Boulevard Senior Guarantees"; and

WHEREAS, on November 14, 2007, Consolidated and Boulevard executed a Business Loan Agreement, loan number 3067 (the "Boulevard Junior Loan Agreement") and certain related loan documents pursuant to which certain lenders (the "Boulevard Junior Lenders") agreed to make a loan (the "Boulevard Junior Loan") in the principal amount of $200,000 to Boulevard to fund the Project. The obligations of Boulevard under the Boulevard Junior Loan Agreement are secured by the property identified in a Deed of Trust dated November 14, 2007 by and among Boulevard and the Boulevard Junior Lenders (the "Boulevard Junior Collateral," and, together with the Boulevard Senior Collateral, the "Boulevard Collateral"), and includes all of Boulevard's right, title and interest in a series of parcels known as the "Brownstone Parcels" and have been guaranteed by Mark Doppe. The guarantee executed by Mark Doppe in favor of the Boulevard Junior Lenders is referred to herein as the "Boulevard Junior Guarantee." The Boulevard Senior Guarantee and the Boulevard Junior Guarantee are referred to collectively as, the "Boulevard Guarantees." The Subordinated Lenders, the Building Six Lenders, the Boulevard Senior Lenders and the Boulevard Junior Lenders are referred to herein as the "Lenders."; and

WHEREAS, VCSP is currently in default under the Subordinated Loan Agreement and the Building Six Loan Agreement, and Boulevard is in default under the Boulevard Senior Loan Agreement and the Boulevard Junior Loan Agreement; and

WHEREAS, VCSP and Boulevard each filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 28, 2009 in the United States Bankruptcy Court for the Western District of Washington and those cases have now been transferred to the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"); and

WHEREAS, Consolidated has initiated various actions (the "Guarantor Actions") to collect amounts alleged to be due and owing by the Guarantors under their respective guarantees in a Nevada state court and a Washington state court; and

WHEREAS, VCSP has proposed its Second Amended Plan of Reorganization dated July 8, 2009 (the "VCSP Plan") and Boulevard has proposed its Plan of Reorganization Dated May 28, 2009 (the "Boulevard Plan"); and

WHEREAS, Consolidated has indicated that it may object to and vote against the VCSP Plan absent Bankruptcy Court approval of the settlement set forth herein (the "Settlement") and the Building Six Lenders have rejected the VCSP Plan; and

WHEREAS, the Boulevard Senior Lenders have rejected the Boulevard Plan; and

WHEREAS, on July 31, 2009, Consolidated, the Debtors and the Guarantors attended a settlement conference before the Hon. Herbert A. Ross, negotiated in good faith for the resolution of their disputes and reached the settlement set forth herein; and

WHEREAS, the parties believe that it is in their best interests to resolve their various disputes via this Settlement rather than through continued litigation;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are duly acknowledged, the parties agree as follows:

## AGREEMENT

1. Settlement Payment.

(a)    On the Payment Date (as defined below), Doppe shall (as to (ii)-(v) below), and Galadriel shall (as to (i) below), tender their respective portions of the sum of $750,000 to Consolidated (the "Initial Settlement Payment"). The Initial Settlement Payment shall be allocated and paid as follows:

(i)    $444,872 shall be paid for the purchase of the Subordinated Loan, without recourse;

(ii)    $42,257 shall be paid for amounts due and owing in respect of the Building Six Guarantees;

(iii)    $59,395 shall be paid for amounts due and owing in respect of the Boulevard Senior Guarantee;

(iv)    $23,476 shall be paid for amounts due and owing in respect of the Boulevard Junior Guarantees; and·

(v)    $180,000 shall be paid to reimburse Consolidated for its fees and costs incurred and to be incurred in connection with the Bankruptcy Cases.

(b)    On the first business day to occur on or after the first anniversary of the Payment Date or the sale of the Boat (the "Second Payment Date"), Doppe shall (as to (ii)-(iv) below), and Galadriel shall (as to (i) below), tender their respective portions of the sum of $250,000 plus interest from the Condition Fulfillment Date at a rate of 5% per annum to Consolidated (the "Second Settlement Payment"). For purposes of this Agreement, the term "Boat" shall mean the 2007 Nordhaven 55 watercraft owned by Mark and Michelle Doppe as of the date hereof. The Second Settlement Payment shall be allocated and paid as follows:

(i)      $195,119 plus accrued interest shall be paid for purchase the Subordinated Loans, without recourse;

(ii)      $18,534 plus accrued interest shall be paid for amounts due and owing in respect of the Building Six Guarantees;

(iii)      $26,050 plus accrued interest shall be paid for amounts due and owing in respect of the Boulevard Senior Guarantees; and

(iv)      $10,297 plus accrued interest shall be paid for amounts due and owing in respect of the Boulevard Senior Guarantees.

(c)      The Initial Settlement Payment and the Second Settlement Payment shall be made in good funds on the dates set forth in this Agreement without setoff or counterclaim of any kind or nature whatsoever.

2.      Escrow Deposit. Upon the execution of this Agreement by all of the parties hereto, the Guarantors shall place $750,000 in cash in escrow (the "Escrow Funds") to be released to Consolidated on the Payment Date as the Initial Settlement Amount. Consolidated agrees that the Escrow Funds shall be returned to the Guarantors upon the termination of this Agreement, and that Consolidated shall not attempt to levy or execute upon such funds for any reason until the earlier to occur of (a) the date upon which such funds have been returned to the Guarantors or (b) the tenth day following the termination of this Agreement. Consolidated shall have no right, title and interest in and to the Escrow Funds until they are released to Consolidated as the Initial Settlement Amount.

3.      Security. In order to secure the Second Settlement Payment, Mark and Michelle Doppe shall cause a perfected second priority security interest in favor of Consolidated (the "Second Lien") to attach to the Boat as of the Payment Date, subject only to the prior security interest of Bank of America in the principal amount of $1,000,000 (the "Boat Loan"). In addition, on the Payment Date, the Guarantors shall each deliver a confession of judgment in favor of Consolidated acknowledging their joint and several liability to Consolidated in the additional amount of $1,000,000 plus interest at the legal rate from and after August 25, 2009 (the "Confessions of Judgment"). Such Confessions of Judgment shall not be entered in the Guarantor Actions so long as the Second Settlement Payment is paid as set forth in clause (b) of Section 1, above and shall be of no force or effect after such payment. Any payments under the Confessions of Judgment shall (after reimbursement of legal fees and costs and any other costs of collection) be allocated in the same proportion as the Second Settlement Payment.

4.      Support of VCSP Plan. After the Condition Fulfillment Date has occurred, unless this Agreement is terminated pursuant to the terms of this Agreement, Consolidated shall cause the Subordinated Lender to vote in favor of the VCSP Plan, and will use its best efforts to cause the Building Six Lenders to do the same. In addition, Consolidated shall not object in any way to the confirmation of the VCSP Plan.

5.    Modification of Boulevard Plan.  Promptly following the Payment Date, unless this Agreement has been terminated pursuant to the terms of this Agreement, Boulevard will modify the Boulevard Plan to provide for the transfer of all of the real property owned by Boulevard, including the Boulevard Collateral, to a new limited liability company ("New Boulevard") to be managed by Consolidated and owned by all of the Boulevard Senior Lenders and the Boulevard Junior Lenders in two equity classes in respect of their proportional interests as set forth on Exhibit A hereto; provided, that the Boulevard Plan, as modified by this Section 5, shall provide that all distributions to New Boulevard equity holders will go to the Boulevard Senior Lenders until all amounts due in respect of the Boulevard Senior Loans are indefeasibly repaid, and, thereafter, to the Boulevard Junior Lenders.  Such transfer shall be on an "as is," "where is" basis and shall be free and clear of all claims and interests to the fullest extent permitted by the Bankruptcy Code.  So long as the Payment Date has occurred, such transfer also shall be in complete satisfaction of all of Boulevard's obligations to the Boulevard Lenders under or in connection with the Boulevard Senior Loan and the Boulevard Junior Loan. Consolidated shall use its best efforts to cause the Boulevard Lenders to vote in favor of the Boulevard Plan, as modified by this Section 5 (the "Modified Boulevard Plan").  Prior to soliciting any votes in respect of the Modified Boulevard Plan, Boulevard shall comply with all applicable provisions of the Bankruptcy Code relating to disclosure and plan modification and Consolidated shall support Boulevard in its efforts to comply with such provisions.  If the Modified Boulevard Plan cannot be confirmed (or if at least 51% in amount of each of the Boulevard Senior Lenders and Boulevard Junior Lenders do not approve the Modified Boulevard Plan), the automatic stay pursuant to section 362 of the Bankruptcy Code shall be deemed lifted and modified, without further order of the Court, to permit foreclosure of the Boulevard Collateral and such relief shall constitute compliance by Boulevard with this Section 5.  In the interest of clarity, the parties acknowledge that Boulevard's satisfaction of its obligations under this Section 5 shall not excuse, release or modify any of the obligations of the Guarantors or Galadriel under this Agreement, including all obligations to make payments pursuant to Section 1.

6.    Transfer of Subordinated Loan.  On the Payment Date, the Subordinated Lender shall and hereby does assign, sell and transfer all of their right, title and interest in and to the Subordinated Loan to Galadriel, an affiliate of the Guarantors. Such transfer shall be free and clear of all liens, security interests and other charges to the fullest extent permitted by the Bankruptcy Code, except that the Guarantors and Galadriel acknowledge that the Subordinated Loan shall remain subject to the Subordination Agreement.  Promptly after the Effective Date, the Subordinated Lender shall forward to Galadriel copies of all of the relevant loan documents in respect of the Subordinated Loan (with all necessary endorsements) and shall execute such other documents as are necessary to properly record and evidence the transfer of the Subordinated Loan to Galadriel.  Doppe and Galadriel each acknowledge that the Subordinated Loan shall be converted into a beneficial interest in the plan trust to be created under the VCSP Plan on the Payment Date.

7. <u>Releases</u>.

(a)    <u>Release by Lenders of Guarantors</u>.  Subject to subsection (c) hereof, on the Payment Date, in consideration of the covenants, agreements and promises set forth herein, Consolidated and each Lender, on behalf of itself and each of its agents, successors, assigns and representatives of any kind (collectively, the "<u>Lender Parties</u>"), hereby forever releases and discharges each of the Guarantors and each of their agents, successors, assigns and representatives of any kind (collectively, the "<u>Guarantor Parties</u>") from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Payment Date arising out of or in any way related to the Building Six Guarantees and the Boulevard Guarantees; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise (collectively, the "<u>Lender Released Guarantor Claims</u>").  For purposes of this <u>Section 7(a)</u>, a Lender Released Guarantor Claim shall be deemed to exist or arise on or before the Payment Date if it arises from events, facts, conditions, circumstances or conduct occurring on or before the Payment Date.

(b)    <u>Releases by the Guarantor Parties</u>.  On the Payment Date, in consideration of the covenants, agreements and promises set forth herein, each Guarantor Party hereby forever releases and discharges each Lender Party from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Payment Date arising out of or in any way related to the Building Six Guarantees and the Boulevard Guarantees; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise (collectively, the "<u>Guarantor Released Claims</u>").  For purposes of this <u>Section 7(b)</u>, a Guarantor Released

Claim shall be deemed to exist or arise on or before the Payment Date if it arises from events, facts, conditions, circumstances or conduct occurring on or before the Payment Date.

      (c)    <u>Obligations Not Affected</u>.  The releases set forth herein shall not release or impair any of the obligations or rights of the parties under this Agreement, including, without limitation, (i) the obligation of Doppe to pay the Settlement Payment and the Second Settlement Payment as required by Section 1, (ii) the existence, perfection or priority of the Second Lien to secure the Second Settlement Payment, (iii) the Confessions to Judgment of the Guarantors to be executed pursuant to this Agreement or (iv) any claims and defenses that may arise under applicable law a result of any party's breach of this Agreement.

      (d)    <u>Stay of Guarantor Actions</u>.  As of the Payment Date, Consolidated and the Guarantors shall stipulate to stay all of the Guarantor Actions until the Second Payment Date and shall take no further actions of any kind in such actions during the stay period to enforce or collect any claims against the Guarantors; <u>provided</u>, that Consolidated may take any ministerial actions that may be required to keep the stay in place and prevent the dismissal of the Guarantor Actions pending the payment of the Second Settlement Payment.  In addition, within five business days of the payment of the Second Settlement Payment to Consolidated as set forth in paragraph 1, Consolidated shall seek to dismiss the Guarantor Actions with prejudice and shall not prosecute any such Guarantor Actions following receipt of such payment.

    8.  <u>Conditions Precedent</u>.

      (a)    Except as set forth in subsection 8(c) below, this Agreement shall become binding upon the parties on the first day (the "<u>Condition Fulfillment Date</u>") following the occurrence of each of the following events:

        (i)    Each party hereto shall have delivered to each other party hereto a duly executed counterpart to this Agreement;

        (ii)    The Guarantors shall have placed the Escrow Funds into an escrow complying with the terms and conditions of this Agreement on or before the execution of this Agreement by all the parties hereto;

        (iii)    Mark Doppe and Michelle Doppe shall have executed all necessary and desirable documents (including security agreements, UCC-1's, title documents and approved assignment of title documents) so that Consolidated shall have the Second Lien on the Boat to secure payment of the Second Settlement Payment as of the Payment Date and shall have executed and delivered the Confessions of Judgment;

        (iv)    The Bankruptcy Court shall have entered a final, non-appealable order (the "<u>Approval Order</u>"): (i) approving the Settlement and authorizing VCSP and Boulevard to enter into, execute and perform this Agreement, (ii) finding that the amounts to be paid pursuant to Section 1 do not constitute payments of "Subordinated Indebtedness" as defined by the Subordination Agreement or that the FDIC has consented

to the Settlement and (iii) finding that the Settlement was negotiated and entered into in good faith;

      (v)    The Subordinated Lender shall have executed and approved this Agreement and shall have agreed to transfer the Subordinated Loan to Galadriel on the Payment Date;

      (vi)    Consolidated shall have received approval of this Agreement and the Settlement from Building Six Lenders holding 51% of the percentage interests in the Building Six Loan and such Building Six Lenders shall have agreed to release the Building Six Guarantees on the Payment Date;

      (vii)    Consolidated shall have received approval of this Agreement and the Settlement from Boulevard Senior Lenders holding 51% of the percentage interests in the Boulevard Senior Loan and such Boulevard Senior Lenders shall have agreed to release the Boulevard Senior Guarantees on the Payment Date;

      (viii)    Consolidated shall have received approval of this Agreement and the Settlement from Boulevard Junior Lenders holding 51% of the percentage interests in the Boulevard Junior Loan and such Boulevard Junior Lenders shall have agreed to release the Boulevard Junior Guarantees on the Payment Date.

The conditions precedent set forth in Sections 8(a)(ii) and (iii) may be waived only by Consolidated. The condition precedent set forth in Section 8(a)(iv) above may be waived by the mutual agreement of Consolidated, the Debtors and the Guarantors to the extent permitted by applicable law.

      (b)    The "Payment Date" of this Agreement shall be the first day following the occurrence of each of the following events:

      (i)    Each of the conditions set forth in Section 8(a) of this Agreement shall have been satisfied or waived as permitted herein;

      (ii)    The representations and warranties set forth in Section 10 of this Agreement shall be true and correct; and

      (iii)    The effective date of the VCSP Plan shall have occurred.

      (c)    Notwithstanding any of the foregoing, Section 2 of this Agreement shall automatically become valid, binding and enforceable against Consolidated and the Guarantors upon the execution of this Agreement by all of the parties hereto without further action by such parties or order of the Bankruptcy Court.

    9.   Termination.

      (a)    This Agreement shall automatically terminate upon the occurrence of the following:

(i)     The Bankruptcy Court shall enter an order denying confirmation of the VCSP Plan; or

(ii)     The Payment Date shall not have occurred prior to December 1, 2009, unless, prior to such date, such date is extended by Consolidated in writing.

(b)     Prior to the Payment Date, this Agreement may be terminated by the Debtors or the Guarantors upon three days' written notice to Consolidated if either the class containing the Subordinated Lender or the class containing the Building Six Lenders does not accept the VCSP Plan; provided, that the Debtors and the Guarantors shall not have the right to terminate the Agreement pursuant to this subsection (b) if the VCSP Plan is modified in a manner adverse to the Building Six Lenders without the consent of Consolidated.

(c)     Prior to the Payment Date, this Agreement may be terminated by Consolidated upon three days' written notice to the Debtors and the Guarantors if a modification is made to the VCSP Plan that contradicts this Agreement or is adverse to the Building Six Lenders.

(d)     Notwithstanding anything in this Section 9, this Agreement may not be terminated after the occurrence of the Payment Date.

(e)     In the event that this Agreement is terminated pursuant to this Section 9, the Escrowed Funds and the Confessions to Judgment shall be returned to the Guarantors, the releases shall be ineffective, and the parties shall be returned to the exact same position that existed immediately prior the execution of this Agreement without prejudice to any of their relative rights or remedies. Further, the obligations of the parties under Section 2 of this Agreement shall survive termination. Upon termination, of this Agreement, Consolidated shall have 7 days following the first business day immediately thereafter to object to the VCSP Plan and the Boulevard Plan and the Subordinated Lender and the Building Six Lenders shall have an identical amount of time to cast or modify their ballots in respect of such plans and the confirmation hearing in respect of the VCSP Plan and the Boulevard Plan shall be continued to accommodate such actions.

10. Certain Representations and Warranties.

(a)     Each party hereto hereby represents and warrants to each other party that (i) except for Bankruptcy Court approval, the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate or other action and will not require any registration with, consent or approval of, or notice to or action by, any governmental unit and (ii) this Agreement shall constitute the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, in each case as of the Condition Fulfillment Date;

(b)     The Subordinated Lender that is a signatory hereto hereby represents and warrants to Mark Doppe that it is the legal and beneficial owner of the note evidencing the Subordinated Loan and that it has not transferred such beneficial

9

interest, directly or indirectly, to any other person. Except as set forth in the immediately preceding sentence, the Subordinated Lender makes no representations and warranties of any kind or nature whatsoever with respect to the Subordinated Loan.

(c)     Guarantors represent that the Boat Loan is not in default as of the date hereof.

11. <u>Miscellaneous</u>.

(a)     This Agreement may be amended, assigned, modified or supplemented only by written agreement executed by each of the parties hereto.

(b)     All disputes relating to or arising out of this Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, excluding its choice-of-law rules.

(c)     Except as expressly provided herein, this Agreement shall not create any third party beneficiary rights in any person and shall not confer any rights or remedies upon any person other than the parties and their respective successors and permitted assigns.

(d)     This Agreement constitutes the entire agreement and understanding of the parties with respect to the settlement and releases contemplated herein and supersedes all prior agreements and understandings, written or oral, between the parties with respect to such settlement and releases.

(e)     This Agreement uses the words "herein," "hereof," and "hereunder" and words of similar import to refer to this Agreement as a whole and not to any provision of this Agreement, and the word "Section," refers to Sections of this Agreement unless otherwise specified.

(f)     Whenever the context so requires, the singular number includes the plural and vice versa, and a reference to one gender includes the other gender and the neuter.

(g)     Except where the context otherwise requires, the word "including" (and, with correlative meaning, the word "include") means including without limiting the generality of any description preceding that word, and the words "shall" and "will" are used interchangeably and have the same meaning.

(h)     This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed an original and all of which together will be deemed to be one and the same instrument. This Agreement may be executed by a signature delivered electronically by facsimile or by email, which shall be deemed the same as an original signature.

(i)     Each of the parties hereto acknowledges that (i) this Agreement is the result of negotiations among the parties and has been reviewed by each party and its

counsel, and (ii) all parties contributed to the drafting of this Agreement. Accordingly, this Agreement shall be deemed the product of each party, and no ambiguity shall be construed in favor of or against any party on the basis that it was the drafter of the Agreement.

(j)     This Agreement is a settlement of disputed claims and other matters. In executing this Agreement, no party is admitting any liability with respect to any of the claims against it released in this Agreement or any other matter addressed herein. Neither this Agreement, nor any act performed or document executed pursuant to this Agreement is or may be deemed to be, or may be used by a party as, an admission of, or evidence of, the validity of any released claim.

(k)     This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any party hereto without the prior written consent of each other party hereto.

(l)     Except as expressly provided herein, each party hereto shall pay its own fees, costs and expenses incurred in connection with (i) the negotiation, execution and delivery of this Agreement and (ii) any of the disputes settled, resolved or satisfied pursuant to this Agreement.

(m)     Each of the parties hereto agrees to take any actions, and execute any documents, which are reasonably necessary to effectuate this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

> VCSP, LLC, a Nevada limited liability company, as a debtor
>
> By_____
>       Name:
>       Title:
>
>
> BOULEVARD ENTERPRISES, LLC, a Nevada limited liability company, as a debtor
>
> By_____
>       Name:
>       Title:
>
>
> RHAPSODY PARTNERS, LLC, a Nevada limited liability company, as a guarantor
>
> By_____
>       Name:
>       Title:
>
>
> GALADRIEL, LLC, a Washington limited liability company, as a purchaser of the Subordinated Loan
>
> By_____
>       Name:
>       Title:
>
>
> _____
> Mark Doppe, as a guarantor
>
>
> _____
> Michelle Doppe, as a guarantor

CONSOLIDATED MORTGAGE,
LLC, a Nevada limited liability
company

By_____
      Name:
      Title:

Acknowledged and Agreed:*

DESERT CAPITAL REIT, INC


By_____
      Name:
      Title:
* Signatory for purposes of Sections
6, 8(a)(v) and 10(b) only

13

## EXHIBIT A

Allocation of Settlement Amount to the Lenders

## EXHIBIT A

### Boulevard Senior Lenders and Percentages

ACCESSIBILITY INC., A NEVADA CORPORATION AS TO AN UNDIVIDED 50.0/650.00 INTEREST.

ROBERT M BEVILLE LIVING TRUST DATED MARCH 1, 2000; ROBERT M BEVILLE, TRUSTEE AS TO AN UNDIVIDED 50.0/650.00 INTEREST.

MARKETING COMMUNICATIONS AND RESEARCH CORP, DBA MARKETING SOLUTIONS EMPLOYEES RETIREMENT TRUST, DEFINED BENEFIT TRUST #001; M L BOTTFELD AND S G BOTTFELD, TRUSTEES AS TO AN UNDIVIDED 100.0/650.00 INTEREST.

RYAN M. COATES AND KATHLEEN A. COATES, HUSBAND AND WIFE TOGETHER AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AS TO AN UNDIVIDED 30.0/650.00 INTEREST.

ROBERT LAWRENCE LEVY, A WIDOWER AS TO AN UNDIVIDED 30.0/650.00 INTEREST.

S GEORGE GOICH, A WIDOWER AS TO AN UNDIVIDED 35.0/650.00 INTEREST.

CHARLES J KOVACS AND ANN L KOVACS; HUSBAND AND WIFE TOGETHER AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AS TO AN UNDIVIDED 100.0/650.00 INTEREST.

CECIL L HARGRAVES REVOCABLE TRUST, DATED 04/23/02; CECIL LINCOLN HARGRAVES, TRUSTEE AS TO AN UNDIVIDED 60.0/650.00/ INTEREST.

THE LASITER FAMILY TRUST DATED 2/3/93; NELSON D LASITER AND KAREN A LASITER, TRUSTEES AS TO AN UNDIVIDED 35.0/650.00 INTEREST.

THARALDSON TRUST, DATED 3/20/07; RODNEY D THARALDSON AND MARY K THARALDSON, TRUSTEES AS TO AN UNDIVIDED 32.0/650.00 INTEREST.

TORREY CAPITAL MORTGAGE FUND, LLC; A CALIFORNIA LIMITED-LIABILITY COMPANY AS TO AN UNDIVIDED 100.0/650.00 INTEREST.

PREFERRED TRUST COMPANY, CUSTODIAN OF THE FUNDS FOR DONALD R MIDDLETON, IRA AS TO AN UNDIVIDED 20.0/650.00 INTEREST.

PREFERRED TRUST COMPANY, CUSTODIAN OF THE FUNDS FOR DONALD R MIDDLETON BENEFICIARY OF JOYCE M MIDDLETON, IRA AS TO AN UNDIVIDED 8.0/650.00 INTEREST.

### Boulevard Junior Lenders and Percentages

TAMICE K HIRSCHEY, A SINGLE WOMAN AS TO AN UNDIVIDED 105.0/200.00 INTEREST.

JOHN T HILEMAN, A WIDOWER, AND NANCY YOUNGER A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY, TOGETHER AS JOINT TENANTS AS TO AN UNDIVIDED 20.0/200.00 INTEREST.

WILLIAM SCOTT KENDRICK, AN UNMARRIED MAN AS TO AN UNDIVIDED 50.0/200.00 INTEREST.

ROBERT A TOMISAK, AN UNMARRIED MAN AS TO AN UNDIVIDED 25.0/200.00 INTEREST.

**SCHEDULE 7.2**

**ASSUMED EXECUTORY CONTRACTS**

| | Contract Counterparty | Description of Contracts | Cure Amount |
|---|---|---|---|
| 1. | Body RX LLC | Commercial Lease Agreement dated September 12, 2007 | $0 |
| 2. | Calles De Suenos, Inc. | Commercial Lease Agreement dated July 24, 2007 | $0 |
| 3. | Jason Cheek, Amanda Cheek, and Shirlee K. Enns, dba as Amanda Lavoy's | Commercial Lease Agreement dated March 13, 2008 | $0 |
| 4. | Kaznick LLC | Commercial Lease Agreement dated March 12, 2008 | $0 |
| 5. | Lee Canyon Ski Lifts, LLC | Commercial Lease Agreement dated May 21, 2007 | $0 |
| 6. | Man Kyu Park, Inc. | Commercial Lease Agreement dated December 19, 2006 | $0 |
| 7. | Nevada State Board of Physical Therapy | Commercial Lease Agreement dated December 12, 2006 | $0 |
| 8. | Olive & Bean, Inc. | Commercial Lease Agreement dated March 12, 2008 | $0 |
| 9. | Rainbow Sweets LLC | Commercial Lease Agreement dated January 2, 2008 | $0 |
| 10. | Rhapsody Partners LLC | Development Agreement dated October 1, 2005 | $0 |
| 11. | Rhapsody Partners LLC | Commercial Lease Agreement dated February 14, 2008 | $0 |
| 12. | Shane D. Petrelli Insurance Agency, Inc. | Commercial Lease Agreement dated April 18, 2007 | $0 |
| 13. | Shepherd of the Hills Lutheran Church | Commercial Lease Agreement dated January 5, 2009 | $0 |
| 14. | Tanta Stere D.D.S., P.C. | Commercial Lease Agreement dated August 21, 2007 | $0 |

| 15. | Wishbones LLC | Commercial Lease Agreement dated February 14, 2008 | $0 |